UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK EMILIO, on his own behalf and those others similarly situated,<br><br>　　　　　　Plaintiff,<br>v.<br><br>LUMBER LIQUIDATORS, INC., a Delaware corporation.<br><br>　　　　　　Defendant | Case No. 3:15-CV-0290 (GTS/DEP)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mark Emilio, by and through the undersigned counsel, brings this class action suit against Defendant, LUMBER LIQUIDATORS, INC., (hereinafter referred to as "Defendant" or "Lumber Liquidators"), and alleges:

### NATURE OF ACTION

1. Defendant Lumber Liquidators sells laminate wood flooring through the 19 stores it operates in New York. On March 1, 2015, CBS reported on its news show, *60 Minutes*, that Lumber Liquidators' laminate wood flooring products manufactured in China and sold in New York contained excessive amounts of formaldehyde, a substance known to cause cancer. According to CBS, the laminate wood flooring emits formaldehyde gas as toxic levels that exceed strict state and federal standards for such emissions. The result is that New York consumers, like Plaintiff Mark Emilio, have purchased unsafe laminate flooring, and Lumber Liquidators continues to sell unsafe flooring to New York consumers.

2. Persons who are exposed to formaldehyde suffer an increased risk of nasal cancer. The International Agency for Research on Cancer (IARC) and the National Institute for Environmental Health Sciences classify formaldehyde as a human carcinogen. Short-term health

1

effects from formaldehyde exposure include burning sensations in the eyes, nose and throat; coughing; wheezing; nausea; and skin irritation.

3. Denny Larson, executive director of the nonprofit organization, Global Community Monitor, tested numerous samples of Lumber Liquidators Chinese-made laminate flooring and stated, "[t]he average level in Lumber Liquidators products that we found was over six to seven times above the state standard for formaldehyde. And we found some that were close to 20 times above the level that's allowed to be sold." Mr. Larson advocated that customers rip up and replace affected floors, even if doing so will put a strain on their finances. "If I had to borrow money to do it, that's what I'd do," he said. "I wouldn't expose my family to it." Larson further added, "We want them to remove every single board at their cost," Larson said. "It was sold to people on a false claim that it was compliant."

4. Plaintiff Mark Emilio purchased 12mm Dream Home St. James Antique Acacia Laminate Flooring from Lumber Liquidator store #246, located in Johnson City, New York on February 6, 2015. Prior to installation and after learning of the *60 Minutes* story, Mr. Emilio contacted Lumber Liquidators to repudiate the sale and return the laminate flooring to the store. In order to return the flooring he purchased, Mr. Emilio incurred the costs of renting a U-haul truck and paying for gasoline to transport the laminate flooring back to the store. At the time of this filing, Mr. Emilio has not been paid back the $3425.79 for his purchase of flooring and materials or the $210.32 in costs he incurred returning the flooring to Lumber Liquidators.

5. Plaintiff brings this action and seeks to represent similarly situated persons in New York who have purchased Defendant's laminate wood flooring products that were manufactured in China and sold to New York consumers from March 1, 2011 to the date of judgment herein ("the Class") for monetary damages and injunctive relief.

## PARTIES

6. At all times material and relevant herein, Plaintiff MARK EMILIO was a New York resident. On February 2, 2015, Plaintiff paid Lumber Liquidators a deposit of $1000 towards the purchase of 12mm Dream Home St. James Antique Acacia Laminate Flooring. On February 6, 2015, Plaintiff paid Lumber Liquidators the balance of his purchase, for a total of $3425.79. Plaintiff's contractor picked up the laminate wood flooring from the Lumber Liquidators store in Johnson City, NY on February 28, 2015. Plaintiff became aware of the *60 Minutes* news story on or about March 4, 2015 and called Lumber Liquidators to cancel his purchase on March 4 and March 5, 2015. On March 7, 2015, Plaintiff rented a truck from U-Haul, loaded the laminate wood flooring, and transported the laminate wood flooring to Lumber Liquidators store in Johnson City, NY at an additional cost of $179.91 for truck rental and $30.41 for gasoline. At the time of this filing, Plaintiff has not been paid back any amount.

7. Defendant LUMBER LIQUIDATORS, INC. is incprorated in Delaware and maintains a principal place of business in Toano, Virginia. Defendant supervises and controls the development, manufacturing, marketing, distribution and sales of laminate wood flooring products throughout at least 19 retail stores in New York. As such, Defendant has substantial contacts, receives benefits, and generates income from activities in the State of New York.

## JURISDICTION AND VENUE

8. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), as diversity exists, there are more than 100 class members, and Plaintiff believes that the amount in controversy exceeds $5 million. The Court has personal jurisdiction over the Defendant.

9. Venue is proper in this District under 28 U.S.C. § 1391(a)(1) in that Lumber Liquidators does sufficient business in this District to subject it to personal jurisdiction herein. Venue is also proper under 28 U.S.C. § 139l(a)(2) in that Lumber Liquidators engaged in substantial acts in furtherance of the alleged improper conduct, including Lumber Liquidators' dissemination of false and misleading information regarding the nature, quality, and/or components of its laminate wood flooring products within this District.

## FACTUAL ALLEGATIONS

10. On July 7, 2010, President Obama signed the Formaldehyde Standards for Composite-Wood Products Act into law (the "FSCWP Act"). This legislation, which adds a Title VI to Toxic Substances Control Act ("TSCA"), establishes limits for formaldehyde emissions from composite wood products: hardwood plywood, medium-density fiberboard, and particleboard. The national emission standards in the FSCWP Act mirror standards previously established by the California Air Resources Board ("CARB").

11. On its website and in marketing materials, Lumber Liquidators states that all the laminate wood flooring it sells complies with California's emission standards, CARB, even for sales outside of California:

> Our commitment begins with meeting the most stringent environmental and quality standards. These standards ensure that our products are safe, meet all government requirements, and are approved by government-approved third-party validators.
>
> This commitment to quality and safety extends to everywhere we do business. We require that all of our suppliers comply with California's advanced environmental requirements, even for products sold outside California.
>
> …
>
> Our commitment to the health and safety of our customers includes meeting or exceeding industry standards on formaldehyde emissions through compliance

4

with applicable regulations such as those established by the California Air Resources Board (CARB).

12. Further, Lumber Liquidators' Purchas Order Terms and Conditions, available on their website, provides the following warranties, which applies to all products:

SELLER'S WARRANTIES: Seller expressly warrants that all goods covered by this Purchase Order will: (a) strictly conform to Seller's specifications, drawings, samples and other written materials and descriptions (b) be free from defects in design, material and workmanship; (c) be of merchantable quality and suitable for the particular purposes intended, whether express or reasonably implied; and (d) bear all warnings, labels, and markings required by applicable laws and regulations. In addition, Seller warrants that: (e) none of the goods covered hereby, to the extent they are subject to laws prohibiting adulteration or misbranding, is adulterated or misbranded within the meaning of such laws as of the date of delivery to Lumber Liquidators; (f) all goods covered hereby may be introduced into the stream of commerce without violation of applicable laws and regulations; and (g) all goods furnished or supplied pursuant to this Purchase Order have been sourced, produced, sold, delivered, declared, packaged, labeled, manufactured, and/or rendered to Lumber Liquidators in compliance with all applicable laws, codes and regulations.

13. On February 2, 2015, Plaintiff paid Lumber Liquidators a deposit of $1000 towards the purchase of 12mm Dream Home St. James Antique Acacia Laminate Flooring. On February 6, 2015, Plaintiff paid Lumber Liquidators the balance of his purchase, for a total of $3425.79. Plaintiff's contractor picked up the laminate wood flooring from the Lumber Liquidators store in Johnson City, NY on February 28, 2015.

14. On March 1, 2015, CBS's news program *60* Minutes reported that its investigators tested 31 of Lumber Liquidators' Chinese-made laminate wood samples, and found that 30 – all but one – failed to meet the safety standard for formaldehyde set by CARB.

15. Formaldehyde is a colorless and flammable chemical. Both Europe's IARC and the U.S. National Toxicology Program classify formaldehyde as a human carcinogen. The naturally-occurring substance is used and concentrated in industries including the manufacture of

pressed woods, glue and preservatives. Formaldehyde can leak out from office and home products in gaseous form, and be inhaled.

16. "Most environmental causes of cancer are of sufficiently low risk that we don't notice them in our daily lives," said Dr. Bernard Goldstein, a physician, toxicologist and former dean of the University of Pittsburgh Graduate School of Public Health in a *Forbes* article published on March 2, 2015. Dr. Goldstein wrote to *Forbes* by email, "For flooring I'd be more concerned about acute health effects, particularly for infants crawling over the floor," Goldstein explained that children breathe in more air relative to their small body sizes than do adults. "When they work hard, as they do when they crawl or run, they will have maximal respiratory uptake of anything gassing off the floor. Pets too," he added.

17. The *60 Minutes* feature included Dr. Philip Landrigan, a physician at New York's Mt. Sinai Hospital who specializes in environmental pediatrics. In discussing the concentration of formaldehyde that comes off the laminated floor in a typical home, Dr. Landigan said: "It's not a safe level. It's a level that the U.S. EPA calls polluted indoor conditions." On the program, Landrigan said that long-term exposure to formaldehyde increases the risk for chronic respiratory irritation, reduced lung function and asthma. He also explained that children are most likely to be affected.

18. On March 4, 2015, U.S. Senator Bill Nelson requested that three federal agencies investigate Lumber Liquidators. That same day, Senator Nelson sent a letter to the Consumer Product Safety Commission, the Center for Disease Control and Prevention, and the Federal Trade Commission and called for independent testing of the laminate flooring to see if it potentially poses a health risk to the public. "Because this could affect millions of homeowners it is imperative we get some answers quickly." Nelson said.

19. Plaintiff became aware of the *60 Minutes* news story on or about March 4, 2015 and called Lumber Liquidators to notify them of the defect and cancel his purchase on March 4 and March 5, 2015.

20. On March 7, 2015, Plaintiff rented a truck from U-Haul, loaded the laminate wood flooring products he previously purchased, and transported the laminate wood flooring products to Lumber Liquidators' store in Johnson City, NY at an additional cost of $179.91 for truck rental and $30.41 for gasoline.

21. Lumber Liquidators continues to sell and misrepresent the quality of its Chinese-manufactured flooring products as CARB compliant when it knows that this is false. Lumber Liquidators failed to properly investigate and inform customers regarding the formaldehyde emissions problems associated with its products.

22. Contrary to Lumber Liquidators' promises, the Chinese-made laminate wood flooring it sells contains high amounts of formaldehyde.

23. Had Defendant adequately and fairly represented its products, Plaintiff and the Class would not have purchased these products and would not incur additional damages in returning these products to Lumber Liquidators.

24. Lumber Liquidators' violations of law and systemic warranty breaches have caused, and will continue to cause, significant financial harm to Plaintiff and the Class.

25. Plaintiff and the Class have been damaged by Defendant's dangerous and deceptive Chinese-made laminate wood flooring products. Plaintiff and the Class are entitled to a return of the full purchase price paid for Chinese-made laminated wood flooring products and other associated damages.

## CLASS ALLEGATIONS

26. Pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) Plaintiffs seek certification of the following Class:

> All Persons in New York who purchased Defendant's laminate wood flooring products that were manufactured in China from March 1, 2011 to the date of judgment herein.
>
> Excluded from the Class are the Defendant, its parent, subsidiaries affiliates, officers and directors; any Judge to who this action is assigned; and any member of such Judge's staff or immediate family.

27. Plaintiff, individually and on behalf of those similarly situated seeks economic damages and injunctive relief. Plaintiff does not assert claims for any personal injury damages caused by exposure to formaldehyde from the laminate wood flooring sold by Defendant.

28. The Class is sufficiently numerous that joinder of all affected persons would be impracticable. The exact number of class members can be determined through discovery. It is estimated that the Class is comprised of thousands of persons.

29. Given the significant expense required to prosecute the claims against Defendant, the costs of individual actions may exceed or consume the amount recovered in an individual action. The expense of pursuing individual actions will economically discourage individual members of the Class from bringing their individual claims against Defendant if they are not permitted to pursue those claims as a Class.

30. A class action is a superior method of adjudicating the Class members' claims because individual actions would unnecessarily burden the Court and may create the risk of inconsistent results.

31. This action is manageable because the evidence proving that Defendant is responsible for damages caused through its sale of non-conforming laminate wood flooring is common to the Class.

32. There are numerous questions of law and fact common to the Class. Those questions include, but are not limited to:

   a) Whether laminate wood flooring sold by Lumber Liquidators exceeds the levels of emissions provided by federal or state requirements;

   b) Whether laminate wood flooring sold by Lumber Liquidators exceeds the levels of emissions provided by CARB;

   c) Whether Lumber Liquidators' representations that its laminate wood flooring products comply with CARB are misleading;

   d) Whether Lumber Liquidators' representations that its laminate wood flooring products comply with CARB are likely to deceive consumers;

   e) Whether Lumber Liquidators' representations that its laminate wood flooring products comply with CARB are likely to confuse the public;

   f) Whether Lumber Liquidators' representations that its laminate wood flooring products comply with CARB are material;

   g) Whether Lumber Liquidators' representations that its laminate wood flooring products comply with CARB constitute deceptive and unfair trade practices under the New York General Business Law;

   h) Whether Lumber Liquidators' representations that its laminate wood flooring products comply with CARB constitute a violation of the Magnusson Moss Warranty Act;

i) Whether Lumber Liquidators' representations that its laminate wood flooring products comply with CARB constitute a breach of express warranty;

j) Whether Lumber Liquidators' representations that its laminate wood flooring products comply with CARB constitute a breach of implied warranty;

k) Whether Lumber Liquidators' sales of laminate wood flooring products that do not comply with CARB constitute deceptive and unfair trade practices under the New York General Business Law;

l) Whether Lumber Liquidators was negligent in the sale of its laminate wood flooring products that do not comply with CARB;

m) Whether Lumber Liquidators was unjustly enriched in the sale of its laminate wood flooring products that do not comply with CARB;

n) Whether Lumber Liquidators' actions or failures to act caused Plaintiffs' and the Class's damages;

o) Whether Plaintiff's and the Class's damages can be calculated by formula or other methodology; and

p) Whether the Defendant may assert certain affirmative defenses applicable to all Plaintiffs and the Class.

33. Plaintiff's claims are typical of the Class's claims. Plaintiffs have no interests that are antagonistic or adverse to the Class.

34. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class and has retained counsel who are experienced in class actions and complex litigation. Accordingly, Plaintiff will fairly and adequately protect and represent the interests of the Class.

35. Defendant has acted on grounds generally applicable to all the members of the class, including but not limited to: failing to halt sales of laminate wood flooring that does not comply with CARB emission standards, thereby making final injunctive relief appropriate on behalf of the Class.

36. Plaintiff and the Class were injured directly and proximately by Defendant's conduct.

37. Plaintiff seeks certification of a class, alternatively, under Fed. R. Civ. P. 23(a), 23(b)(2) or 23(b)(3), or a combination thereof.

### COUNT I – Violation of NY General Bus. Law §§ 349 *et seq.*

38. Plaintiff incorporates by reference preceding paragraphs as if fully set forth herein.

39. Plaintiff and Class Members are consumers of Defendant's products and are the end users and intended beneficiaries of said products.

40. Defendant is engaged in consumer-oriented conduct within the intended ambit of GBL § 349.

41. Defendant's actions and/or omissions as described herein violated GBL § 349 *et seq.*, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

42. Defendant has engaged in unlawful deceptive business acts and practices by selling and/or distributing laminate wood flooring products in New York that exceed the CARB limit for formaldehyde emissions from composite wood products.

43. Defendant has engaged in unlawful deceptive business acts and practices by advertising to New York consumers through its website, promotional materials and with labeling

on its laminate wood flooring products that misrepresent that such products are CARB compliant when in fact they are not. Defendant has also engaged in unlawful deceptive business acts by falsely representing that the laminate wood flooring products it distributes and sells in New York have been certified by independent entities as complaint with CARB formaldehyde standards.

44. Defendants continue to engage in unlawful deceptive business practices by failing to inform New York consumers that the laminate wood flooring products it distributes and sells in New York emit formaldehyde gas at levels that exceed the formaldehyde emission limits set forth in CARB.

45. Defendant continues to engage in unlawful deceptive business practices by expressly warranting on every package of laminate wood flooring products that it distributes and sells in New York, as well as advertising on its website, that such products comply with CARB.

46. As a direct result of Defendant's unlawful deceptive business practices, Plaintiff and the Class suffered injury by lost money or property.

47. Defendant engaged in the same or similar unlawful deceptive business practices against the Class and caused harm to Class members.

48. Accordingly, Plaintiff seeks on behalf of himself and for all those similarly situated, compensatory and consequential damages, equitable and injunctive relief, punitive damages, costs and reasonable attorneys' fees and all other relief as appropriate..

### COUNT II – Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*

49. Plaintiff incorporates by reference preceding paragraphs as if fully set forth herein.

50. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, *see* 15 U.S.C. § 2301(1).

51. Defendant's laminate wood flooring products constitute "consumer products" within the meaning of the Magnuson-Moss Warranty Act, *see* 15 U.S.C. § 2301(1).

52. Plaintiff and Class Members are consumers of Defendant's products within the meaning of the Magnuson-Moss Warranty Act, *see* 15 U.S.C. § 2301(3).

53. Defendant's express warranties and written affirmations of fact regarding the quality and nature of its laminate wood flooring products, including that such products complied with CARB, constitute written warranties within the meaning of the Magnuson-Moss Warranty Act, *see* 15 U.S.C. § 2301(3).

54. Defendant breached these warranties by selling and/or distributing laminate wood flooring products in New York that exceed the CARB limit for formaldehyde emissions from composite wood products.

55. Defendant's breaches of its express warranties and caused monetary damage to Plaintiff and the Class.

56. Plaintiff's individual claims exceed $25. In addition, the amount in controversy exceeds $50,000 (exclusive of interests and costs) for the putative Class's claims.

57. Plaintiff notified Defendant of its breach of written warranties and Defendant has failed to adequately cure its breaches.

58. As a direct and proximate result of Lumber Liquidators' breaches of its written warranties, Plaintiff and the other Class members sustained monetary damages.

59. Accordingly, Plaintiff seeks on behalf of himself and for all those similarly situated, compensatory and consequential damages, equitable and injunctive relief, punitive damages, costs, reasonable attorneys' fees and all other relief as appropriate.

## COUNT III – Breach of Express Warranty Act

60. Plaintiff incorporates by reference preceding paragraphs as if fully set forth herein.

61. Defendant made express warranties and written affirmations of fact regarding the quality and nature of its laminate wood flooring products, including that such products complied with CARB.

62. Defendant made express warranties and written affirmations of fact regarding the quality and nature of its laminate wood flooring products, including that such products was free of defects.

63. Defendant made express warranties and written affirmations of fact by expressly warranting on every package of laminate wood flooring products that it distributes and sells in New York, as well as advertising on its website, that such products comply with CARB.

64. Defendant breached these warranties by selling and/or distributing laminate wood flooring products in New York that exceed the CARB limit for formaldehyde emissions from composite wood products.

65. Plaintiff notified Defendant of its breach of written warranties and Defendant has failed to adequately cure its breaches.

66. As a direct and proximate result of Lumber Liquidators' breaches of its written warranties, Plaintiff and the other Class members sustained monetary damages.

67. Accordingly, Plaintiff seeks on behalf of himself and for all those similarly situated, compensatory and consequential damages, equitable and injunctive relief, punitive damages, costs, reasonable attorneys' fees and all other relief as appropriate.

## COUNT IV – Breach of Implied Warranty of Merchantability

68. Plaintiff incorporates by reference preceding paragraphs as if fully set forth herein.

69. Defendant's sale of laminate wood flooring products to Plaintiff and the Class were subject to an implied warranty that the products were reasonably fit for the purposes for which such products are used.

70. Defendant's sale of laminate wood flooring products to Plaintiff and the Class were subject to an implied warranty that the products were acceptable in trade for the product description.

71. When Defendant sold laminate wood flooring products were merchantable because such products were legal and could lawfully be possessed.

72. Plaintiff did not knowingly purchase a product that was illegal to own or possess.

73. Plaintiff did not knowingly purchase a product that was unfit for the ordinary purposes for which it was intended.

74. Defendant sold laminate wood flooring products in New York that are unfit for the ordinary purposes for which they are intended.

75. Defendant breached implied warranty of merchantability by selling and/or distributing laminate wood flooring products in New York that exceed the CARB limit for formaldehyde emissions from composite wood products.

76. Plaintiff notified Defendant of its breach of implied warranties and Defendant has failed to adequately cure its breaches.

77. As a direct and proximate result of the defect concealed by Defendant in selling and/or distributing laminate wood flooring products in New York, such products are now essentially worthless and cannot be reasonably re-sold by Plaintiff and Class members.

78. As a direct and proximate result of the defect concealed by Defendant in selling and/or distributing laminate wood flooring products in New York, Plaintiff and Class members much incur additional costs in the replacement of laminate wood flooring products purchased from Defendant.

79. As a direct and proximate result of Lumber Liquidators' breaches of its implied warranties, Plaintiff and the other Class members sustained monetary damages.

80. Accordingly, Plaintiff seeks on behalf of himself and for all those similarly situated, compensatory and consequential damages, equitable and injunctive relief, punitive damages, costs, reasonable attorneys' fees and all other relief as appropriate.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, seeks the following relief:

A. Certifying the Class and appointing Plaintiff and his counsel to represent the Class;

B. Finding and declaring that Defendant is financially responsible for notifying all Class Members about the defects described herein;

C. Finding and Declaring that Defendant is to repair and/or replace all defective and/or misbranded flooring at no cost to Plaintiff or the Class;

D. Enjoining Defendant from further deceptive sales practices with respect to Defendant's laminate wood flooring products;

  E. Awarding Plaintiff and the other members of the Class their actual damages and consequential damages;

  F. Awarding Plaintiff and the other members of the Class specific performance;

  G. Awarding pre- and post-judgment interest on monetary damages;

  H. Awarding Plaintiffs and Class members' reasonable attorneys' fees and costs, to be paid by Defendant; and

  I. Awarding any and all such further relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims.

Dated: March 12, 2015
   Oneonta, New York

By: _____
Theodoros Basdekis (No. 601478)
**SCARZAFAVA, BASDEKIS LAW FIRM**
48 Dietz Street, Suite C
Oneonta, NY 13820-5107
Telephone: (607) 432-9341
Fax: (607) 432-1986
tbasdekis@stny.rr.com

Gregory Y. Porter (*to be admitted pro hac vice*)
James L. Kauffman (*to be admitted pro hac vice*)
**BAILEY & GLASSER LLP**
910 17th Street, N.W., Suite 800
Washington, DC 20006
Telephone: (202) 463-2101
Fax: (202) 463-2103
gporter@baileyglasser.com
jkauffman@baileyglasser.com

*Counsel for Plaintiff*